I would like to reserve three minutes. All right. Thank you. Good morning, your honors. May it please the court, my name is Raymond Aver from the law offices of Raymond H. Aver, a professional corporation appearing on behalf of the appellant B3 Capital Ventures LLC. Today I would like to discuss two primary issues. One which I will say is an attack on the sanctity of contracts and our position that the bankruptcy court erred when it determined that the debtor met its burden of proving by clear and convincing evidence that the bank had impliedly waived the right under the loan documents to default interest. My rulings are an attack on the plain meaning of two provisions of the bankruptcy code 502 and 506 B and that is that the bankruptcy court erred without affording B3 Capital notice or a hearing in disapproving fees and costs incurred subsequent to December 31, 2016. With regard to the attack on the sanctity of contracts, it is undisputed that the debtor, Crystal Waterfalls, entered into a contract, a loan agreement, promissory note, etc. It is not disputed that B3 Capital was an over-secured creditor by the time of default interest is not one which gives the bank or the borrower discretion. It says if there is a default, default interest shall accrue at 5%. And the loan agreement talks about waiver and it says that the lender shall not be deemed to have waived any rights under the agreement unless such waiver is given in writing and signed by lender. As the bankruptcy court, the bankruptcy court in concluding that there had been a waiver. I'm looking at the no waiver by lender and that ends with no prior waiver by lender nor any course of dealing between lender and borrower shall constitute a waiver as to future transactions. So it does seem to contemplate that there could be a course of dealing between the lender and borrower that could constitute a waiver except as to future transactions. And so here, the court made particular findings regarding the course of conduct. So why was that an error? It seems consistent with the party's contemplation under the contract that a course of conduct could constitute a waiver. Well, Your Honor, in this case, the evidence of the alleged waiver is rather flimsy. It's an email communication between the borrower and a lower level employee at the bank where the borrower is saying, you know, give me a loan payoff and the lower level employee is saying, well, here are some numbers but you need to verify these. If you really want a payoff, you need to contact the bank and request a formal payoff. But that amount, as I understand the record, in no way reflected the default rate. You're right, Your Honor. It did not reflect the default rate. So that coupled with the lack of evidence in the record that FCB ever took the position that Crystal owed the default rate, I would think that that's a course of conduct that operates as a waiver. These are factual findings. So, you know, we owe the lower court's deference to the extent they made factual findings, don't we? Yes. As the court will recall, however, that on the motion for reconsideration when we argued manifest injustice, we provided a document that appeared to have been withheld, which was an agreement from December where the borrower, it's a specific agreement, I think it's from December of 14, where the borrower and the bank specifically talk about the fact that the bank is not waiving default interest. The question is from the past or just as to the future? I think, Your Honor, I'd have to go back and look to the exact language. The actual letter agreement is in the record, but it speaks for itself. I mean, the fact is, aside from the estimate of the payoff, prior to that, there was a month-to-month that the payments were being made and the bank kept accepting Crystal's payments, right, and applied them to both principal and interest based on the, not on the default rate, but just the regular interest rate. And there was, there's nothing wrong with doing that. I mean, there never came a point in time where there was a payoff demand or there was some definitive timeframe where if the default interest wasn't asserted, it would be waived. As to future transactions, but what about past transactions? That's where the acceptance of payments without default rate, I think, really comes into play. Well, I would like to move on then to the attorney's fees, if I may. In terms of the attorney's fees, the bankruptcy court did give an opportunity to file amended proof of claim, right? Okay. I think, so let's start with, I mean, let's start with the code sections, because this is really, I think, where the gist of it is. And I want to just say with regard to amended proof of claim, while it's denominated amended proof of claim, it's only an updated proof of claim. And each, the first proof of claim was as of October. The second proof of claim was as of December. And it only updated the numbers. Nothing else was changed, no, so, and I want, and I'd like the court to focus in on the language of 502 and 506B. So, in 502, basically says that if an objection to a claim is made, the court after notice and hearing shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition. So, that is when the determination is made as to an objection to a proof of claim. It's pretty clear from the statute. Now, you can't read 502 in isolation. You have to also look at 506. And 506 says that to the extent an allowed claim is secured by property, the value of which after any recovery is greater than the amount of such claim, there shall be allowed to the holder of such claim interest on such claim, and any reasonable fees, costs, et cetera, et cetera. So, in this particular case, the determination is the amount of the claim under the code is as of the date of the filing of the petition. And then a separate determination should be made as to the allowability, whether, you know, whether you've got an oversecured creditor and whether they're allowed fees and interest on their claim. Because if they're undersecured, they wouldn't be entitled to that. In our case, what happened is we went, we, the filings are what they are, and we went to the court and we had a hearing. And because of some delays in briefing, and I, it's been said that we delayed in filing our papers, we say that we were given an opportunity to, a couple of days extension to file papers. At any rate, what happened essentially is the reply was filed two days before the hearing. And there was a lengthy hearing. And the hearing primarily dealt with the entitlement to default interest. But at the end of the hearing, I said, I just want to make sure that B3 reserves its rights under the note and deed of trust to seek and obtain interest from the period of December 31 down to, I guess, today when it got paid off fees and costs and other expenses that have incurred since then. And I think that B3 is entitled to under the terms of the note. The proof of claim specifically says that the claim is as of December 31. We were standing there before the court on January 25, you know, a little less than 30 days later. It's pretty apparent to anyone that there would have been additional fees and costs that would have been incurred between December 31 and January 25. You have estimated those costs. Your Honor, you know, it's, sure, I could have estimated them. But how reliable would that be? And how would a court be able to determine the reasonableness of that? I, every day, as the court knows, every day more time is put in. How much time are you going to need to prepare for the hearing? How much time are you going to need to prepare the opposition? It's almost, in a sense, educated speculation. And the court says, in response to that comment, well, I think the court asked for a spreadsheet that would have tallied to it. And I think what, and that, and what I think the court is talking to as far as asking for a spreadsheet was in the court's tentative ruling. And then counsel for the debtor says, and this is on page 750 and 751, and there will be additional fees that are incurred by B3, presumably. So even the debtor's counsel acknowledged that there would be additional fees and costs. What happened after that hearing is the court issued its order setting a briefing schedule. And as we know, in that order setting the briefing schedule, the court allowed the claimant to file a spreadsheet regarding interest. But specifically ordered the claimant not to, you know, there was nothing about attorney's fees or costs. So we essentially were blindsided in the sense that as of the time of the hearing, we thought we were reserving our rights. Everyone knew that there were additional attorney's fees and costs. And potentially there would be another hearing at another time, not to determine, you know, what the actual fees and costs were. Because as an oversecured creditor, under 506B, the attorney's fees and costs we incurred shall be awarded to us unless the court determines that those fees and costs are not reasonable. That's what the language of the code says, shall. How much are we talking about in this month of January? We're talking about $35,000, $40,000. Not an insignificant amount. And the court concluded without even determining having the attorney's fees and costs before it that it would be prejudicial to allow B3 capital to seek those fees and costs. But as we know, the debtor hadn't even filed the disclosure statement or plan at that point in time. And as we subsequently learned, and I don't think counsel will dispute this, the debtor filed a motion for order approving a structured dismissal. And by that order, the debtor agreed to set aside $3 million in sufficient funds to pay, among other claims, B3's claim. So how much prejudice, I just don't, I don't see the prejudice at all. And I, so with that, your honors, unless the court has any questions for me, that's what I have to say. Thank you, counsel. Thank you. Good morning, your honors. Ian Landsberg of Landsberg Law on behalf of the debtor, Annapolis. If it pleases the court, I'll address my, focus my comments on those that were made by counsel. And he seems to have limited the three issues down to two. It deals with the waiver argument and the express terms of the loan and security agreement, as well as the attorney's fees. Counsel tries to, as it relates to attorney's fees, tries to say that we really weren't dealing with anything beyond the date of the petition or anything beyond December 31st, 2016. That's really not true. We filed a motion to object to their claim, to disallow the claim. We filed that motion and prior to that time, we had asked on a half a dozen or even a dozen occasions between a two month period to ask for the backup documents regarding the B3 proof of claim that was filed on October 31st. It took us forever to get those documents. We probably would have had a more extensive motion to disallow the claim if we actually received the documents before we had to file the objection. It was clear from the hearings and it was clear from the briefs that we weren't just limiting this to the date of the bankruptcy petition. We were limiting it. We were not limiting it. We were looking for additional fees through the date that we were looking at the hearing. And the reason that we were looking for these fees, Your Honor, is as you have in any bankruptcy proceeding, you need to deal with how much money is being paid to the secured creditor underneath its secured loan. If you don't know what you have there, you don't know what you have left to pay the balance of the claims. You don't know what you're paying, administrative claims, unsecured priority claims, or general unsecured claims. That's why it's so important to have this figure. So to talk about how much money is set aside, Your Honor, to look at it in hindsight would probably just obliterate what happened in the bankruptcy court because it would say, oh, we still have $3 million left. Now we have sufficient money even if there was a mistake, even if there was a waiver, and even if counsel or the secured creditor did not comply with what they were supposed to do in the bankruptcy court. So I would say that even though there's a Bankruptcy Code Section 506B that says that an oversecured creditor is entitled to post-petition interest as well as attorney's fees, I don't argue what 506 says. I'm aware that oversecured creditors are entitled to their accruing interest at the contract rate when we get into the next argument. And they're entitled to attorney's fees. But it also comes down to the reasonableness of it. It doesn't say I ask for X or I'm entitled to X. It comes down to a discussion and the motions that were filed in bankruptcy court to determine what the allowance of those fees are, what it is limited to if it's limited to at all, and what the reasonableness of those fees are. And I think that the bankruptcy court and the district court did get it right. But if counsel is saying he was blindsided by the fact that he thought all that was issued at stake was what was as their December 31, 2016, and that there would be a subsequent petition as to the January. Well, I don't look at the record and see it that way as it relates to a subsequent petition, Your Honor. I look at it and I see that there's an objection to a claim asking for fees that have been incurred in this case. How much money are you owed for attorney's fees that you've spent on this case up to today? You think he should have estimated? Oh, I've done it all. I just did it in a motion the other day, Your Honor. It's common practice to basically say we're owed this when we get to the hearing because you don't want to waive that amount of money. When you get to the hearing, if you say I'm owed $100,000 as of X, but I still have to see the opposition, I need to see the reply, and I need to attend the hearing. You need to put in an estimate of what you believe it's going to cost. Overestimate or underestimate whatever you do, but take a reasonable estimate. And when you get to the court, you can actually advise the court at that time, Your Honor, I've estimated $7,500. But after today, if we're hearing is over, it's only $6,000. But at least everybody has notice and it can go on the record. That would be blindsiding. To say that we would deal with it at another time, it wouldn't happen. You're dealing with one claim with regard to fees. If there is additional claims regarding fees, then counsel would be filing a motion to supplement the fees, or we as debtors counsel would be asking for it because the demand would go into escrow, which it did, because we actually sold the hotel in the bankruptcy proceeding, which was the reason we could do a structured dismissal. But we're dealing with the issues of the attorney's fees incurred at that time up to the date of the hearing. So an estimate is reasonable, and it's expected, and it's common practice. With regard to the waiver argument, Your Honor, counsel in his brief seems to focus on one select document that was basically signed by one of the principals. But that document doesn't say exactly what counsel believes. That was one email, and it was back in December 3rd of 2014, that a letter was provided by First Commercial Bank, FCB. Are you talking about the letter that was submitted in connection with the motion for reconsideration? Correct, and that's the letter. And counsel is stating that we have this, and the only way we actually got this, Your Honors, is when it was produced by counsel. And this is the information that we were asking for before. We didn't have it in our possession. The client wasn't aware of this, and it's a letter that was generated by FCB and would have been in their file when they purchased the loan. This letter says, FCB expressly reserves the right to exercise and enforce all rights and remedies under the loan documents, including the right to collect all unpaid default interest. Exercise and enforce. That's one thing that counsel seems to leave out, and all the pleadings do. Exercise and enforce, to me, means that there has to be an affirmative act on behalf of FCB to do something to exercise their rights. This entire term of the loan, when it started in 2011, nothing was done by the lender to exercise its rights, to assert default interest. The property taxes weren't paid. They could have actually charged default interest. It was not done. The payoff statement that was provided, it might have said that it's an estimate. It didn't have attorneys. It didn't have, excuse me, a default rate of interest in there. We're not talking about a minor discrepancy regarding certain costs. We're talking about an additional 5% interest calculation on past due sums. We're talking about a difference here and in the pleadings between $350,000, and I'm just rounding it up, to $1.5 million. There is a substantial amount of money, about a $1.2 million discrepancy. But when we look at waiver factors, it's not just that letter. We look at the immediate right to be able to charge default interest back when the property taxes were not paid in just 2011. It was not done. There was a letter that he's claiming in 2014 that they could have asserted a default rate of interest. It was not done. The purchase and sale agreement had a loan schedule attached to it. It identified the outstanding balance. It identified the outstanding balance with the contract rate of interest, not the default rate of interest. The purchase and sale agreement in and of itself also had a number of reps and warranties. Section 4M of the purchase and sale agreement on the reps and warranties of the seller, the statement of the principal balance and accrued and unpaid interest are on the loan set forth on Exhibit A and is true and correct as of the calculation date. That's at the contract rate of interest, not the default rate of interest. Section 5A of the purchase and sale agreement covenants of the seller. The information set forth in the loan schedule attached with respect to the loan is true and correct in all material aspects of the date of this agreement. Section 6B of the purchase and sale agreement provides that the seller has disclosed to the purchaser that the borrower of the loan is delinquent in the payment of real property taxes assessed against the mortgage property. The reason I mention that, Your Honor, is because even though counsel hasn't made that argument today, there was the holder in due course argument, which I don't believe that the buyer is, simply because one, there was a default in principle because the loan payment history showed that payment stopped a year prior to the purchase of the loan. And number two, the notice of default, which was recorded a year prior to the purchase of the loan, also provided in the last sentence above the signature that the lender had actually accelerated and expected that it was, all the outstanding obligations were immediately due and payable under the loan. So they're not a holder in due course. This is a classic example of a waiver of the provisions within the contract, and the contracts themselves are form documents, Your Honor. They're LaserPro docs that I believe almost every lender uses. So they're similar forms. And the law is clear that even though there are provisions in the agreement that provide that the waiver has to be signed by the lender, those provisions can be waived. In the case law, and I believe that that's in this case. Waived by conduct? Waived by conduct, Your Honor. Affirmative acts. By the documents that we have and everything that I've stated, Your Honor, I believe that that constitutes a waiver. Unless the, do you have any further questions? I don't have any further questions, Your Honor. Thank you very much. Thank you. Thank you. Counsel says that, it never, counsel says that, well, I thought that the judge was going to allow and afford us an opportunity to present the further attorney's fees and costs. Counsel, and I would add that there was never any specific objection to the post-petition attorney's fees and costs. Ultimately, the only objection that was made by the debtor was to the pre-petition attorney's fees and costs. So counsel says it's common practice to estimate. I've been a bankruptcy lawyer for 35 years. I would respectfully say that it's not a common practice to estimate. Counsel says that the client wasn't aware of the waiver letter. Well, the principal of the debtor throughout the bankruptcy case was Lucy Gao. And if the court looks at the agreement at 606, this agreement was acknowledged and agreed to by Lucy Gao on December 3, 2014. How could she not have been aware of what she had signed? It just doesn't meet the smell test. Counsel says, relies heavily on the purchase and sale agreement. In the briefs, we set forth that the purchase and sale agreement was between the buyer and the seller. The debtor was not a party to that agreement. The agreement specifically says that no rights are afforded any third parties. The purchase and sale agreement is, the debtor was not a third party beneficiary of this purchase and sale agreement. And to rely on anything with regard to the purchase agreement as to waiver is just wrong because it has nothing to do with the debtor. Lastly, with regard to holder and due course, I wasn't going to raise it, but counsel has. The bankruptcy court relied on 3304B1 of the California Uniform Commercial Code, which says that with respect to an instrument payable at a definitive time, the following rules apply. One, if the principal is payable in installments and a due date has not been accelerated, the instrument becomes overdue upon default under the instrument for non-payment of installment and the instrument remains overdue until the default is cured. However, it is our argument as set forth in the brief that B1 doesn't apply because of the exception set forth in 3304C, which says that unless the due date of principal has been accelerated, an instrument does not become overdue if there is default in payment of interest but no default in payment of principal. And with that, I would submit. Thank you very much, counsel, for both sides of your argument.
judges: Gilman, Fisher, Nguyen